UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTEFAN ENTERPRISES INC.,

        Plaintiff,

v.                          CASE: 8:05-CV-810-T-17TGW

COCO BONGO INC.,

        Defendant.

_____

REPORT AND RECOMMENDATION

This cause came on to be heard upon the Plaintiff's Motion for Additional Sanctions to Coerce Compliance with Court's Injunction Dated September 7, 2005 (Doc. 19) and Edwin Gomez's Cross Motion to Vacate Sanctions (Doc. 27). The motions were referred to me for a report and recommendation (Doc. 31).

Both of these motions are now moot. Consequently, all that remains for consideration is the amount of monetary sanctions that have accrued against the corporate defendant and corporate officer Henar Giovanny Santa Cruz for violating an injunction in this case. In this connection, I recommend monetary sanctions of $77,000 to be remitted to the court's

registry and $28,416.04 to be paid to the plaintiff for attorneys' fees and expenses it incurred as a result of the violation of the injunction.

I.

The plaintiff, Estefan Enterprises, Inc., owns and operates Cuban-themed restaurant/nightclubs under the registered trademark "Bongos Cuban Café." The plaintiff filed a lawsuit against defendant Coco Bongo, Inc., alleging several claims of trademark infringement and unlawful business practices arising from the defendant's operation of "Club Coco Bongo" nightclubs in Tampa, Florida, and New Jersey and the website "www.clubcocobongo.com" (Doc. 1). The plaintiff claims that the defendant's "Club Coco Bongo" name is confusingly similar to its trademark "Bongos Cuban Café," thereby misleading the public into believing that the defendant's nightclubs are affiliated with, or otherwise connected to, the plaintiff (id.).

After the defendant failed to respond to the complaint, a clerk's default was entered against it (Doc. 10). Following the entry of the default, the court, on September 7, 2005, granted plaintiff's motion for a permanent injunction (Doc. 11). As pertinent here, the injunction provides (Doc. 12)(emphasis omitted):

> Defendant, and its agents, officers, servants, employees, successors and assigns and all others acting in concert or in privity with Defendant, shall be and [are] hereby permanently enjoined and restrained from using ..."Club Coco Bongo," "Coco Bongo Night Club," "Coco Bongo Tampa Night Club," and/or "www.clubcocobongo.com."

However, as of October 4, 2005, the defendant continued using the Coco Bongo name and the clubcocobongo website remained operational (Docs. 13-2, 13-3). Consequently, on October 26, 2005, the court entered an order for the defendant to show cause by November 4, 2005, why it should not be held in contempt for violation of the injunction (Doc. 14). The defendant did not respond to this order and continued to use the Coco Bongo name. Thereafter, the plaintiff moved for sanctions against the defendant to gain compliance with the injunction (Doc. 15). On January 23, 2006, the court entered an order granting the plaintiff's motion for sanctions (Doc. 16)("Sanctions Order"). It states, in pertinent part (id.):

> [T]he following sanctions are imposed against Defendant and its officers and directors, Edwin Gomez and Giovanny Santa Cruz ... 1) a per diem fine of $1,000.00 until such time as Defendant complies with the Court's injunction; 2) an accounting of Defendant's profits since the date of the entry of the injunction so that compensatory damages may thereafter be assessed; and 3) an award of reasonable attorney's fees and costs

> incurred as a result of Defendant's willful violation
> of this Court's injunction....

However, the defendant's use of the Coco Bongo name continued (Doc. 18-2). Consequently, on March 24, 2006, the plaintiff filed a second motion for sanctions, seeking an order to show cause why the defendant and its officers should not be incarcerated for their continued failure to comply with the court's injunction (Doc. 19).

Finally, in April 2006, Edwin Gomez, president of the defendant company, made an appearance in this matter (Doc. 20). Gomez filed a motion requesting that the order imposing sanctions against him be vacated because he was allegedly a passive investor in the defendant company and he was not aware of the injunction until February 2006 (Doc. 27-5). He also submitted an affidavit averring that, on or about April 12, 2006, the "Coco Bongo" sign at the Tampa nightclub had been changed to "Cohiba's Lounge" (Doc. 26-2, ¶15; Doc. 26-4). The plaintiff subsequently filed a reply withdrawing its request for incarceration of the defendant's officers (Doc. 28).

The issue of sanctions and Gomez's request to vacate the sanctions imposed against him were referred to me for an evidentiary hearing

and a report and recommendation (Doc. 31).   The determination of the amount of sanctions was orally referred to me.

Accordingly, an evidentiary hearing was held, at which Gomez testified (<u>see</u> Doc. 35; Transcript of Proceedings dated July 6, 2006).[1]  There was no appearance on behalf of the corporation or by Santa Cruz.

At the hearing, Gomez reiterated that the sign at the defendant's Tampa nightclub had been changed (Tr., pp. 70-71).   He further stated that, in February 2006, all references to the Tampa nightclub had been removed from the clubcocobongo website (<u>id</u>. at p. 56).   Gomez testified, however, that the name Coco Bongo was still being used at the New Jersey nightclub and the cocobongo website remained operational because the defendant and its officers have no control over them (<u>see</u> <u>id</u>. at p. 61).   Thus, Gomez averred that they are owned by another company, the Salsa Corporation, whose principal is Arnd Bollhart (<u>id</u>. at pp. 42, 56, 65; <u>see</u> <u>also</u>  Doc. 27-2, ¶3).

At the conclusion of the hearing, the plaintiff was authorized to depose Santa Cruz (Doc. 37).   Thereafter, both parties were permitted to file

---

[1]The transcript of the proceeding has not been filed in this case; however, a copy has been provided to me and will be referenced as "Tr." in this report and recommendation.

supplemental memoranda regarding the issues discussed at the hearing, which they did (Docs. 37, 40, 41).

However, the parties' evidence bearing upon the imposition of sanctions continued to be deficient (Doc. 42). In particular, it seemed to me that the plaintiff was proceeding under the mistaken idea that it would recover the monetary sanctions that had been imposed, when, in fact, the law directs that the sanctions are to be paid to the court (id.). In addition, there was unaddressed authority delineating factors to be considered in imposing sanctions (id.). Consequently, I permitted the parties another opportunity to submit evidence, and a schedule was set for the submission of memoranda regarding the plaintiff's claim for compensatory damages, attorneys' fees and costs (id.). The parties were also urged to resolve independently their dispute (id.).

On December 20, 2006, the plaintiff submitted a response stating that it "and Edwin Gomez have negotiated a settlement of the Sanctions Order as it pertains to Gomez" (Doc. 43, ¶1). Accordingly, they submitted a Stipulation for Entry of Consent Order (Doc. 47), and the court entered an order on that stipulation (Doc. 48), which releases Gomez of all obligations under the Sanctions Order.

The plaintiff, however, reserved its rights under the Sanctions Order against the corporate defendant and Santa Cruz (Doc. 43, ¶2). Accordingly, it submitted evidence that it incurred attorneys' fees and costs totaling $39,425.79 as a result of the defendant's violation of the injunction (id. at ¶3). The plaintiff did not submit evidence of compensatory damages, arguing that the defendants failed to provide the necessary documentation from which such a computation could be made (id. at ¶4).

## II.

As indicated, the plaintiff and Gomez have settled their dispute (Doc. 43). The court approved that resolution and has released Gomez "from any and all obligations under the Court's Sanctions Order..." (Doc. 48). Accordingly, Gomez's Cross Motion to Vacate Sanctions (Doc. 27) should be denied as moot.

Additionally, the plaintiff's Second Motion for Sanctions to Coerce Compliance with Court's Injunction, which requested incarceration of the defendant's corporate officers for their failure to comply with the injunction, should be denied as moot because the plaintiff withdrew this request (Doc. 28). Thus, although the motion was not formally withdrawn by

the plaintiff, it filed a response dated May 4, 2006, stating that, "[w]ith respect to Plaintiff's pending Motion for Additional Sanctions, that Motion was filed to coerce compliance with the Court's preliminary injunction. Having apparently accomplished its intended purpose, Plaintiff withdraws its request to incarcerate the Defendant's two officers" (id. at ¶1). Accordingly, this motion is moot as well.

### III.

Therefore, all that remains for consideration is the amount of monetary sanctions to be assessed against the corporate defendant and its officer, Santa Cruz, pursuant to the Sanctions Order of January 23, 2006 (Doc. 16).

A. The Sanctions Order imposed a per diem fine of $1,000 until the defendant and its officers complied with the injunction (id.). The injunction directs (Doc. 12) (emphasis omitted):

> Defendant, and its agents, officers, servants, employees, successors and assigns and all others acting in concert or in privity with Defendant, shall be and [are] hereby permanently enjoined and restrained from using ..."Club Coco Bongo," "Coco Bongo Night Club," "Coco Bongo Tampa Night Club," and/or "www.clubcocobongo.com..."

The evidence establishes that the defendant achieved compliance with the injunction as of April 12, 2006.  Thus, Gomez averred that, on or about April 12, 2006, the Coco Bongo sign on the Tampa nightclub was changed to the name "Cohiba's Lounge" (Doc. 26-2, ¶15).  Further, Gomez had all references to the Tampa nightclub removed from the clubcocobongo website in February (Tr., p. 56).

The plaintiff disputes that the defendants have complied with the injunction because the New Jersey nightclub has not changed its name and the website "www.clubcocobongo.com" is still operating (Doc. 40, pp. 10-11, 14).  However, as indicated, the evidence is that the New Jersey nightclub and website are owned by another company and are not controlled by the defendant or its officers.  The plaintiff has provided nothing to dispute or cast doubt on that testimony.  See Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)(it is the plaintiff's burden to "establish by clear and convincing proof that the underlying order was violated").  Therefore, the continued operation of the New Jersey nightclub and the website does not violate the injunction.

In sum, excluding the date the Sanctions Order was issued (January 23, 2006), and the date of compliance (April 12, 2006), seventy-seven days passed before the defendant complied with the court's injunction. Accordingly, sanctions totaling $77,000 have accrued for failing to comply with the court's order.

The court's order is easily read as imposing this sanction against the defendant and separately against Santa Cruz.  Such a sanction would not only be meaningless (since it most likely would not be collectable), but it would also be unfair.  Santa Cruz acted in this matter as the defendant and there is no reason why his failure should double the sanction.  Thus, the sanction of $77,000 should be imposed jointly on the defendant and Santa Cruz.  Further, as previously indicated (Doc. 42), this monetary sanction should be paid to the clerk of this court, not the plaintiff.  See In re Chase & Sanborn Corp., 872 F.2d 397, 401 (11th Cir. 1989).

B.  Judge Kovachevich also ordered the defendant to provide the plaintiff with an accounting of corporate profits from the entry of the injunction so that compensatory damages resulting from the defendant's contumacy may be assessed (Doc. 16).  However, because there is no

evidence of profits from the defendant's operation, there is no basis for an award of compensatory damages.  See In re Chase & Sanborn Corp., supra, 872 F.2d at 401.

   Thus, Gomez produced a summary of sales and expenses for the defendant's Tampa nightclub for the time period September 2005 through April 2006, which shows that there are  no profits from the Tampa Coco Bongo Club (Doc. 40, p. 12; Doc. 40-5). The plaintiff argues that the defendants have yet to provide the required accounting because they have not produced back-up documentation for their calculations (Doc. 43, ¶4; Doc. 45).[2] However, the materials that were provided comply with the plain language of the court order (Doc. 16).  The plaintiff's doubt about the veracity of the information is a discovery issue which should have been the subject of a motion to compel long ago, as this case has already dragged on excessively. Indeed, the plaintiff was previously advised that I would not authorize any further discovery on damage issues because it should have been undertaken earlier (Doc. 42, p. 4).

────────────────

[2]Some back-up documentation has been produced (Doc. 40, p. 13).  However, the plaintiff also requested, but has not received, the corporate defendant's ledger book, credit card records, tax return extension requests, and the name of its accountant (id.).

In sum, because the record does not show any profits from the pertinent time period, there is no basis for an award of compensatory damages to the plaintiff.[3]  Nevertheless, in light of the defendant's failure to provide a full accounting, it is appropriate to treat the $10,000 the plaintiff received from Gomez as applying to compensatory damages, rather than attorneys' fees.

C.  The court also ordered an award of attorneys' fees and costs to the plaintiff resulting from the defendant's willful violation of the injunction (Doc. 16).  In this connection, plaintiff's counsel, Karen L. Stetson, has submitted a declaration stating that the plaintiff has incurred fees of $34,862.25, and costs totaling $4,563.54 (Doc. 44).

In determining the fee award, it is appropriate to establish a "lodestar" figure by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.  <u>Blum</u> v. <u>Stenson</u>, 465 U.S. 886, 888 (1984); <u>Matter of Trinity Industries, Inc.</u>, 876 F.2d 1485, 1494-95 (11th

---

[3]In all events, satisfaction of a judgment appears unlikely based on Gomez's testimony that the corporate defendant is now defunct, and all of its assets have been transferred (Doc. 26-2, ¶3; Tr., p. 67).  There is also no evidence that Santa Cruz is financially able to satisfy this judgment.

Cir. 1989).  In this calculation, the court should exclude hours that were not reasonably expended.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  This "lodestar" may then be adjusted upward or downward based on other considerations.  Id.; Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

1.  With respect to rates, the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).  In this connection, the plaintiff may produce either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1299.  In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. Id. at 1303.

The attorneys who worked on this matter are Karen L. Stetson and Meredith A. Frank (Doc. 44, ¶3).  Stetson states that her hourly rates are $350 and $375, for the years 2005 and 2006, respectively (id.).  Frank's hourly rates are listed as $225 and $250, for the years 2005 and 2006, respectively (id.).

Although there is no objection to these rates, they appear excessive to me, and plaintiff's counsel has not submitted any probative evidence establishing that they are reasonable.  See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303 (The party seeking fees bears the burden of establishing the market rate and should present the court with "specific and detailed evidence" from which it can determine the reasonableness of the proposed rate).  In fact, counsel has not provided any information regarding their legal experience, so the record does not even reflect how many years they have been practicing law, which is an important factor in determining the reasonableness of the hourly rate.  See id. at 1299.

Furthermore, there is no independent affidavit verifying the reasonableness of the rates.  Rather, plaintiff's counsel certifies that "[t]he hourly rates this firm has charged [the plaintiff] are customary and reasonable

in this jurisdiction" (Doc. 44, ¶3).  However, this statement is not probative because it is conclusory and the jurisdiction appears to be Miami, where counsel works.  Of course, the relevant market for establishing a reasonable hourly rate is Tampa.  See American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999)(The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed.).  Notably, the customary hourly rates in Miami seem higher than those charged in Tampa.

Moreover, based on my experience, the hourly rates counsel seek are excessive in comparison with those charged by other attorneys in this district practicing trademark law.  See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303 (the court is itself a fee expert and may consider its own knowledge and experience concerning reasonable and proper fees).  In this regard, I recommend that the lodestar be computed using an hourly rate of $250 for Stetson and $175 for Frank.  These rates are reasonable and appropriate, especially considering that counsel has not presented any evidence of extraordinary skill and this case has not presented any particularly difficult issues.

2.  The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation.  Here, the plaintiff seeks compensation for approximately 113 hours of work related to enforcement of the injunction (Doc. 44, ¶3; Doc. 44-2).

"The fee applicant bears the burden of ... documenting the appropriate hours...." Norman v. Housing Authority of City of Montgomery, supra.  Thus, "fee counsel should have maintained records to show the time spent ... and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Id. If the applicant's documentation "is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, supra, 461 U.S. at 433.  Further, the court should exclude excessive, unnecessary and redundant hours. Duckworth v. Whisenant, supra, 97 F.3d at 1397.

Likewise, "objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 428; see also Norman v. Housing Authority of City of Montgomery, supra, 836

F.2d at 1301.  Accordingly, a fee opponent's failure to explain exactly which hours it views as unnecessary or duplicative is generally viewed as fatal.  See Gray v. Lockheed Aeronautical Systems Co., 125 F.3d 1387, 1389 (11th Cir. 1997).

In this regard, Stetson submitted a declaration stating that she and Frank spent 113.8 hours on matters related to the defendant's violation of the injunction (Doc. 44).  Stetson averred that these hours  "were reasonable and necessary as a result of the violation [of] the Court's Injunction" (id. at ¶3).  Further, counsel submitted time entries which document how that time was related to enforcement of the injunction (Doc. 44-2).

There has been no objection submitted to any of the time entries for which the plaintiff seeks compensation, since neither the defendant nor Santa Cruz made an appearance.  Further, a review of the time entries reveals that they are related to the plaintiff's attempts to gain compliance with the injunction.  Therefore, in light of the lack of any objections by the defendant and Santa Cruz, there is no reason to reduce the number of hours.  Accordingly, the plaintiff should be compensated for 113.8 hours.  In this

connection, the time records show that Stetson and Frank spent 52.5 and 61.3 hours, respectively, on this matter (Docs. 44, 44-2).  Accordingly, the lodestar is as follows:

| Counsel | Rate per hour | Number of Hours | Lodestar |
|---|---|---|---|
| Stetson | $250 | 52.5 | $13,125.00 |
| Frank | $175 | 61.3 | $10,727.50 |
| | | Total Fees: | $23,852.50 |

I therefore recommend that the plaintiff be awarded attorneys' fees of $23,852.50.[4]

    D.  Finally, the plaintiff seeks an award of $4,563.54 for costs and expenses it incurred as a result of the defendant's violation of the court injunction (Doc. 44, ¶4).[5]  These expenses include costs for an investigator, computer research, travel, process servers, court reporters, postage, photocopying, and telephone bills (id., Doc. 44-2).

---

[4]Arguably, the attorneys' fee award might be reduced by the $10,000 received from Gomez.  However, neither the defendant nor Santa Cruz appeared to make such an argument.  Moreover, due to the defendant's failure to provide a full accounting, the $10,000 settlement is appropriately   considered to be compensatory damages. Accordingly, no deduction of the attorneys' fee award is warranted as a result of the settlement.

[5]It is noted that the court's computation of these expenses totaled $4,578.54. However, the court will use the sum requested by the plaintiff.

An award of attorneys' fees and costs to the injured party in a civil contempt case "may include expenses reasonably and necessarily incurred in the attempt to enforce compliance." <u>Sizzler Family Steak Houses</u> v. <u>Western Sizzlin Steak House, Inc.</u>, 793 F.2d 1529, 1534 (11th Cir. 1986). In support of an award of expenses, the plaintiff included a declaration from Stetson averring that the listed expenses were reasonable and necessarily resulted from the failure to comply timely with the injunction (Doc. 44). The expenses are also itemized in the attorney time entries (Doc. 44-2). Again, there has been no objection filed by the defendant or Santa Cruz to any of these expenses. Therefore, under this circumstance, it is appropriate to award the plaintiff costs and expenses totaling $4,563.54.

IV.

For these reasons, pursuant to the Sanctions Order, I recommend that the corporate defendant and its officer, Santa Cruz, be ordered to pay to the court's registry a sanction of $77,000, and to pay $28,416.04 to the plaintiff for attorneys' fees and expenses it incurred as a result of the violation of the injunction. Further, the Plaintiff's Motion for Additional Sanctions to Coerce Compliance with Court's Injunction Dated September 7, 2005 (Doc.

19) and Edwin Gomez's Cross Motion to Vacate Sanctions (Doc. 27) should be denied as moot.

Respectfully submitted,

DATED: FEB. 23, 2007
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).